Filed 8/6/25  In re C.L. CA5

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re C.L. et al., Persons Coming Under the Juvenile Court Law. | |
| KERN COUNTY DEPARTMENT OF HUMAN SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>S.M.,<br><br>Defendant and Appellant. | F089441<br><br>(Super. Ct. Nos. JD145424-00, JD145425-00)<br><br>**OPINION** |

### <u>THE COURT</u>*

APPEAL from an order of the Superior Court of Kern County.  Harry A. Staley, Judge.  (Retired judge of the Kern County Sup. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)

Roshni Mehta, under appointment by the Court of Appeal, for Defendant and Appellant.

---

*  Before Meehan, Acting P. J., Snauffer, J. and Fain, J.†

†  Judge of the Fresno Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Margo A. Raison, County Counsel, and Judith M. Denny, Deputy County Counsel, for Plaintiff and Respondent.

-ooOoo-

## INTRODUCTION

Appellant S.M. is the mother (mother) of H.L.,[1] born in November 2023, and C.L., born in December 2021.  Mother appeals from the juvenile court's order terminating her parental rights as to both children following a contested Welfare and Institutions Code section 366.26[2] hearing.  Mother argues the Kern County Department of Human Services (the department) did not fulfill its duty of further inquiry as required by the Indian Child Welfare Act (ICWA).  Respondent concedes the error.  Pursuant to *In re Dezi C.* (2024) 16 Cal.5th 1112 (*Dezi C.*), we find the department's further inquiry into the children's Indian ancestry was incomplete, conditionally reverse the court's section 366.26 judgment and remand the matter for further proceedings consistent with this opinion.[3]

## FACTUAL AND PROCEDURAL HISTORY[4]

On January 16, 2024, the department filed section 300 petitions for H.L. and C.L. As to H.L., the petition alleged the child had suffered, or there was a substantial risk the child would suffer serious physical harm or illness due to mother's and K.L's substance abuse, pursuant to section 300, subdivision (b)(1) and (2).  As to C.L., the petition alleged the child had suffered, or there was a substantial risk the child would suffer serious

---

[1]    H.L.'s father, K.L., separately appeals the order.

[2]    Further undesignated references to the code are to the Welfare and Institutions Code.

[3]    "[B]ecause ICWA uses the term 'Indian,' we  do the same for consistency, even though we recognize that other terms, such as 'Native American' or 'indigenous,' are preferred by many."  (*In re Benjamin M.* (2021) 70 Cal.App.5th 735, 739, fn. 1, disapproved in part on another ground in *Dezi C.*, *supra*, 16 Cal.5th at p. 1152, fn. 18.)

[4]    We limit the factual summary to those facts relevant to the issues presented in the instant appeal.

physical harm or illness due to mother's substance abuse pursuant to section 300, subdivision (b)(1).

The petitions both described how, in December 2021, at the time of C.L.'s birth, mother and child tested positive for methamphetamine and THC. Then, in November 2023, at the time of H.L.'s birth, mother again tested positive for methamphetamine. On December 5, 2023, drug paraphernalia was found in the children's diaper bag, and C.L. tested positive for amphetamines. The petition also described how K.L. smoked methamphetamine, and on January 2, 2024, methamphetamine was found in his sock. The children were removed from mother's custody on January 16, 2024. An ICWA-010 form attached to the children's petitions indicated neither mother nor K.L. gave the department reason to believe the children are or may be Indian children.

An initial detention hearing was held on January 18, 2024. S.L. was found to be the presumed father of C.L., and K.L. was found to be the presumed father of H.L. The juvenile court questioned mother, K.L. and S.L., who all denied Indian ancestry. Each had also filed an ICWA Parental Notification of Indian Status form, in which they indicated no Indian ancestry.

In a social study filed on April 5, 2024, the department indicated it located 16 maternal and 19 paternal relatives on behalf of C.L., and 11 paternal relatives on behalf of H.L. On January 31, 2024, a social worker spoke with the children's maternal great-grandfather, J.M., Sr., who had placement of the children at the time. J.M., Sr., stated that he did have Indian ancestry "way back" in his family through his mother F.M. (maternal great-great-grandmother). J.M., Sr., stated the tribe is an Oklahoma tribe. The same day, a social worker reached out to J.M., the maternal grandfather, who stated his father J.M., Sr., would have more information, and J.M.'s mother (maternal great-grandmother) was deceased. No other relatives who the department was able to speak with indicated Indian ancestry.

On October 1, 2024, social worker Christina A. filed a declaration in support of the department's ICWA inquiry. The declaration stated Christina obtained an ICWA request form, which listed tribal affiliation for an unknown tribe for the children's

3.

maternal family, based on J.M., Sr.'s report of Indian ancestry through his mother, F.M., with an unknown Oklahoma tribe. Christina reported sending an ICWA inquiry to the Bureau of Indian Affairs (BIA) on August 28, 2024, and an inquiry to the State Department of Social Services–Office of Tribal Affairs (CDSS) on August 29, 2024. The CDSS responded by email on August 29, 2024, indicating there were 37 federally recognized tribes in Oklahoma, and urged additional interviews to see if identifying a more specific geographical location was possible. As of October 1, 2024, the BIA did not respond to the inquiry.

On November 6, 2024, the juvenile court held a section 366.21, subdivision (e) hearing, where the court found there was no reason to know that the children were Indian children, and terminated reunification services for the parents. The court made the finding without prejudice and noted the department had a continuing duty to inquire in compliance with ICWA.

A supplemental declaration by Christina filed on February 27, 2025, indicated further attempts to contact the BIA, with no response. On February 28, 2025, the juvenile court held a section 366.26 hearing where it terminated mother's, K.L's and S.L.'s parental rights. The court found by clear and convincing evidence the children are likely to be adopted and ordered the permanent plan of adoption. Mother and K.L. timely appealed the order.

### DISCUSSION

"ICWA was enacted in 1978 by Congress 'out of concern that "an alarmingly high percentage of Indian families are broken up by the removal, often unwarranted, of their children from them by nontribal public and private agencies." 92 Stat. 3069, 25 U.S.C. § 1901(4). Congress found that many of these children were being "placed in non-Indian foster and adoptive homes and institutions," and that the States had contributed to the problem by "fail[ing] to recognize the essential tribal relations of Indian people and the cultural and social standards prevailing in Indian communities and families." §§ 1901(4), (5). This harmed not only Indian parents and children, but also Indian tribes. As Congress put it, "there is no resource that is more vital to the continued existence and

4.

integrity of Indian tribes than their children." § 1901(3).' (*Haaland v. Brackeen* (2023) 599 U.S. 255, 265 (*Haaland*); accord, *Mississippi Choctaw Indian Band v. Holyfield* (1989) 490 U.S. 30, 32–36 (*Holyfield*); *In re Isaiah W.* (2016) 1 Cal.5th 1, 7–8 (*Isaiah W.*).)" (*In re Jerry R.* (2023) 95 Cal.App.5th 388, 407–408 (*Jerry R.*).)

" '[ICWA] thus aims to keep Indian children connected to Indian families. "Indian child" is defined broadly to include not only a child who is "a member of an Indian tribe," but also one who is "eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." (§ 1903(4).) If the Indian child lives on a reservation, ICWA grants the tribal court exclusive jurisdiction over all child custody proceedings, including adoptions and foster care proceedings. (§ 1911(a).) For other Indian children, state and tribal courts exercise concurrent jurisdiction, although the state court is sometimes required to transfer the case to tribal court. (§ 1911(b).) When a state court adjudicates the proceeding, ICWA governs from start to finish. That is true regardless of whether the proceeding is "involuntary" (one to which the parents do not consent) or "voluntary" (one to which they do).' (*Haaland*, *supra*, 599 U.S. at pp. 265–266; accord, *Holyfield*, *supra*, 490 U.S. at p. 36.)" (*Jerry R.*, *supra*, 95 Cal.App.5th at p. 408.)

"In 2006, 'persistent noncompliance with ICWA led [our state] Legislature … to "incorporate[] ICWA's requirements into California statutory law." ' " (*Jerry R.*, *supra*, 95 Cal.App.5th at p. 409, quoting *In re Abbigail A.* (2016) 1 Cal.5th 83, 91.)

"Subsequently, the California Legislature enacted Assembly Bill No. 3176 [(2017−2018 Reg. Sess.)], effective January 1, 2019, which ' "made conforming amendments to its statutes, including portions of the Welfare and Institutions Code related to ICWA notice and inquiry requirements." ' " (*Jerry R.*, *supra*, 95 Cal.App.5th at p. 410, fn. omitted, quoting *In re K.H.* (2022) 84 Cal.App.5th 566, 595.) The legislation "revised and recast the duties of inquiry and notice, in accordance with federal law, and, relevant to inquiry, 'revise[d] the specific steps a social worker, probation officer, or court is required to take in making an inquiry of a child's possible status as an Indian child.' "

5.

(*Jerry R.*, at p. 411, quoting Legis. Counsel's Dig., Assem. Bill No. 3176 (2017−2018 Reg. Sess.) Stats. 2018, ch. 833, p. 1.)

Very recently, faced with continuing difficulties and inconsistencies in this area of the law, the Legislature enacted Assembly Bill No. 81 (2023−2024 Reg. Sess.) effective September 27, 2024. Assembly Bill No. 81 "create[d] a comprehensive act to protect and preserve Indian families in California and to aid in improving implementation of applicable state and federal laws." (§ 224, subd. (c).) The legislation expressly recognized, "Despite the passage of the federal [ICWA] of 1978, Senate Bill [No.] 678 [(2005−2006 Reg. Sess.)] (Stats. 2006, [c]h. 838), and Assembly Bill [No.] 3176 [(2017−2018 Reg. Sess.)] (Stats. 2018, [c]h. 833), California continues to experience inconsistent implementation of [ICWA] and its related state law protections, thus continuing the harm and breakup of Indian families. Variation in practice undermines tribal sovereignty, furthers destructive impacts on tribes and tribal communities, puts the lives of Indian children and families at disproportionate risk for multiple adverse outcomes, and fails to address systemic racism." (§ 224, subd. (b).)

As amended, section 224.2 provides, in relevant part, "The court, county welfare department, and the probation department have an affirmative and continuing duty to inquire whether a child for whom a petition under Section 300, 601, or 602 may be or has been filed, is or may be an Indian child." (§ 224.2, subd. (a).) "The duty to inquire begins for a county when first contacted regarding a child, including, but not limited to, asking a party reporting child abuse or neglect whether the party has any information that the child may be an Indian child, and upon a county department's first contact with the child or the child's family, including extended family members as defined in paragraph (1) of subdivision (c) of Section 224.1.[5] At the first contact with the child and

---

**5**  Section 224.1, subdivision (c)(1) states, " '[e]xtended family member' has the same meaning as defined by the law or custom of the Indian child's tribe" and as "a person who has reached 18 years of age and who is the Indian child's grandparent, aunt or uncle, brother or sister, brother-in-law or sister-in-law, niece or nephew, first or second cousin, or stepparent."

each family member, including extended family members, the county welfare department or county probation department has a duty to inquire whether that child is or may be an Indian child." (§ 224.2, subd. (b)(1).)

"Inquiry includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child and where the child, the parents, or Indian custodian is domiciled." (§ 224.2, subd. (b)(2).)

"For a court presiding over any juvenile proceeding that could result in placement of an Indian child with someone other than a parent or Indian custodian, including proceedings where the parents or Indian custodian have voluntarily consented to placement of the child, the duty to inquire begins at the first hearing on a petition. At the commencement of the hearing, the court shall ask each party to the proceeding and all other interested persons present whether the child is, or may be, an Indian child, whether they know or have reason to know that the child is an Indian child, and where the child, the parents, or Indian custodian are domiciled, as defined in Section 224.1. Inquiry shall also be made at the first appearance in court of each party or interested person who was not present at the first hearing on the petition. The inquiry and responses shall occur on the record. The court shall instruct the parties and persons present to inform the court if they subsequently receive information that provides reason to know the child is, or may be, an Indian child." (§ 224.2, subd. (c).)

"If the court, social worker, or probation officer has reason to believe that an Indian child is involved in a proceeding, but does not have sufficient information to determine that there is reason to know that the child is an Indian child, the court, social worker, or probation officer shall make further inquiry regarding the possible Indian status of the child, and shall make that inquiry as soon as practicable." (§ 224.2, subd. (e).) Such inquiry includes, "[c]ontacting the tribe or tribes and any other person that may reasonably be expected to have information regarding the child's membership, citizenship status, or eligibility." (§ 224.2, subd. (e)(2)(C).)

"The juvenile court's finding that ICWA does not apply to the proceeding rests on two elemental determinations, 'subject to reversal based on sufficiency of the evidence.' " (*In re K.H.*, *supra*, 84 Cal.App.5th at p. 601, quoting § 224.2, subd. (i)(2); accord, *In re E.C.* (2022) 85 Cal.App.5th 123, 142–143; *Adoption of M.R.* (2022) 84 Cal.App.5th 537, 542; Cal. Rules of Court, rule 5.482(c)(1),[6] (2).) First, "[t]he court must find there is 'no reason to know whether the child is an Indian child,' which is dependent upon whether any of the six circumstances set forth in subdivision (d) of section 224.2 apply." (*K.H.*, at p. 601, quoting § 224.2, subd. (i)(2); accord, *E.C.*, at p. 143; rule 5.482(c)(1).) Second, "[t]he juvenile court must … find a 'proper and adequate further inquiry and due diligence .…' " (*K.H.*, at p. 601, quoting § 224.2, subd. (i)(2); accord, *E.C.*, at p. 143; rule 5.482(c)(1).)

"The juvenile court's finding on the second element 'requires the … court to "engage in a delicate balancing of" various factors in assessing whether the … inquiry was proper and adequate within the context of ICWA and California law, and whether … [there was] due diligence.' " (*In re K.H.*, *supra*, 84 Cal.App.5th at p. 601, quoting *In re Caden C.* (2021) 11 Cal.5th 614, 640; accord, *In re E.C.*, *supra*, 85 Cal.App.5th at p. 143; *In re Ezequiel G.* (2022) 81 Cal.App.5th 984, 1004–1005.)

However, in *Dezi C.* the Supreme Court made clear that a deficiency in an initial inquiry is not simply reviewable for prejudice. "We hold that error resulting in an inadequate initial Cal-ICWA inquiry requires conditional reversal with directions for the child welfare [department] to comply with the inquiry requirement of section 224.2, document its inquiry in compliance with rule 5.481(a)(5), and when necessary, comply with the notice provision of section 224.3. When a Cal-ICWA inquiry is inadequate, it is impossible to ascertain whether the [department]'s error is prejudicial. [Citations.] '[U]ntil [the department] conducts a proper initial inquiry and makes that information known, it is impossible to know what the inquiry might reveal.' " (*Dezi C.*, *supra*, 16 Cal.5th at p.1136.)

---

[6]     Undesignated references to rules are to the California Rules of Court.

Mother argues the department had F.M.'s address, and it appears F.M. is still alive. Mother argues the department therefore should have contacted F.M. for information regarding potential Indian ancestry out of Oklahoma. Respondent agrees.

As noted in *Dezi C.*, we cannot ascertain whether an inquiry was prejudicial when it was initially inadequate. (*Dezi C.*, *supra*, 16 Cal.5th at p. 1136.) The record reflects F.M. is a living relative with potential Indian ancestry. F.M. is either an extended family member pursuant to section 224.1, subdivision (c)(1), a person who has an interest in the child pursuant to section 224.2, subdivision (b)(2), or at the very least a person who is expected to have information about the children's potential tribal membership pursuant to section 224.2, subdivision (e)(2)(C). An adequate inquiry into the children's potential Indian ancestry requires the department to contact and ask F.M. about further information on her Indian ancestry. This contact may also help narrow down the geographical location of the Oklahoma tribe with which the children potentially have a connection.

For this reason, we conditionally reverse the juvenile court's February 28, 2025, section 366.26 order terminating mother's parental rights, and remand the matter to the court for compliance with the inquiry and notice requirements of sections 224.2 and 224.3 and the documentation provisions of rule 5.481(a)(5), consistent with this opinion. "If the juvenile court thereafter finds a proper and adequate further inquiry and due diligence has been conducted and concludes ICWA does not apply (§ 224.2, subd. (i)(2)), then the court shall reinstate the order terminating parental rights. If the juvenile court concludes ICWA applies, then it shall proceed in conformity with ICWA and California implementing provisions. (See 25 U.S.C. § 1912(a); §§ 224.2, subd. (i)(1), 224.3, 224.4.)" (*Dezi C.*, *supra*, 16 Cal.5th at p. 1152.)

## DISPOSITION

We conditionally reverse the juvenile court's February 28, 2025, section 366.26 order terminating mother's parental rights, and remand the matter to the court for compliance with the inquiry and notice requirements of sections 224.2 and 224.3 and the documentation provisions of rule 5.481(a)(5), consistent with this opinion. "If the juvenile court thereafter finds a proper and adequate further inquiry and due diligence has

9.

been conducted and concludes ICWA does not apply (§ 224.2, subd. (i)(2)), then the court shall reinstate the order terminating parental rights.  If the juvenile court concludes ICWA applies, then it shall proceed in conformity with ICWA and California implementing provisions.  (See 25 U.S.C. § 1912(a); §§ 224.2, subd. (i)(1), 224.3, 224.4.)"  (*Dezi C.*, *supra*, 16 Cal.5th at p. 1152.)